IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRENDA L. MURRAY, AS EXECUTRIX OF THE ESTATE OF ROBERT E. MURRAY,** *et al.*, | : : : : | |
| Plaintiffs-Appellants, | : : | Case No. 2:23-cv-3457 |
| v. | : : | Judge Algenon L. Marbley |
| **WILKIE FARR & GALLAGHER LLP,** *et al.*, | : : : : | |
| Defendants-Appellees. | : | |

## OPINION & ORDER

This matter is before this Court on appeal from the United States Bankruptcy Court for the Southern District of Ohio. Plaintiffs Brenda Murray, executrix of the estate of Robert Murray, and Michael Shaheen, trustee of the Robert E. Murray Trust, appeal the bankruptcy court's orders denying their Motion for Remand, Motion to Stay Pending Arbitration, and granting the Motion to Dismiss brought by Defendants Wilkie Farr & Gallagher, Brian Lennon, and Matthew Feldman (together, "Wilkie"). For the reasons more fully stated below, this Court **AFFIRMS** the bankruptcy court's judgment.

### I. BACKGROUND

Robert Murray was the Chairman, President, and Chief Executive Officer of the Murray Energy Corporation. (Compl., R. 1, ¶ 9). Prior to its bankruptcy, Murray Energy was the largest privately owned coal company in the United States. (Disclosure Statement, No. 2:19-bk-56885, Doc. 1155-1, 1). Robert Murray owned all voting shares of Murray Energy. *Id*. at 13. His sons and family trust owned all remaining shares. *Id*.

Robert Murray engaged Wilkie to represent him personally and as trustee of the Robert E. Murray Trust in connection with the Murray Energy restructuring. (Compl., R. 1, ¶ 9–10). Subsequently, Murray Energy and its subsidiaries filed for Chapter 11 bankruptcy. (*See* Disclosure Statement). The bankruptcy court confirmed Murray Energy's reorganization plan ("Chapter 11 Plan") on August 31, 2020. (Chapter 11 Plan, No. 2:19-bk-56885, Doc. 2135).

The Chapter 11 Plan contains an Exculpation Clause that includes Plaintiffs and Wilkie as exculpated parties. (*See id.* at 13 (covering current and former equity holders, officers, and directors and their attorneys)). The Exculpation Clause states:

> [N]o Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission based on the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Cases, including the . . . [Chapter 11] Plan, . . . except for claims related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction[.]

*Id.* at 54–55.

Through the Chapter 11 Plan, Murray Energy withdrew from its obligations to the United Mine Workers of America 1974 Pension Plan and Trust ("1974 Plan"). (Confirmation Order, No. 2:19-bk-56885, Doc. 2135, 22–23). The Chapter 11 Plan did not release the 1974 Plan's claims against Plaintiffs or exculpate Plaintiffs as to those claims. (*Id*. at 50–51).

On March 2, 2021, the 1974 Plan demanded Robert Murray's estate or trust pay $6.5 billion in withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Compl., R. 1, ¶ 18). The next day, the 1974 Plan brought suit against Robert Murray's estate, Brenda Murray, and "entities under control of Robert E. Murray." (*Id.* ¶ 19).

On February 1, 2022, Plaintiffs initiated this lawsuit in the Belmont County Court of Common Pleas, bringing a claim for legal malpractice against Wilkie. (*See id.*). Plaintiffs alleged

2

that "[t]he plan of reorganization in the Bankruptcy Proceeding that Defendants negotiated for Mr. Murray—without informing him of, or protecting him and the Murray Trust against, exposure to billions of dollars in ERISA withdrawal liability claims—has subjected Plaintiffs to the ERISA withdrawal liability claims" brought by the 1974 Plan. (*Id.* ¶ 20).

Wilkie removed the case to the bankruptcy court. (Notice of Removal, R. 1). In their Notice of Removal, they stated that an arbitration agreement applied to Plaintiffs' claim. (*Id.*) Wilkie moved to dismiss. (R. 9). Plaintiffs then moved for remand for lack of subject-matter jurisdiction, or in the alternative, mandatory abstention, permissive abstention, and equitable remand to state court. (R. 42). Plaintiffs opposed Wilkie's Motion to Dismiss on the merits. (R. 51). Wilkie then opposed remand and moved to stay pending arbitration should the bankruptcy court decline to adjudicate the claim. (R. 57; R. 60). Subsequently, Plaintiffs moved to stay pending arbitration and initiated arbitration proceedings. (R. 64).

The bankruptcy court denied Plaintiffs' Motion for Remand and Motion to Stay Pending Arbitration and granted Wilkie's Motion to Dismiss with prejudice to re-filing. (Op. & Order, R. 89). Plaintiffs brought this appeal.

## II. LAW AND ANALYSIS

Plaintiffs appeal the bankruptcy court's order denying remand, denying a stay pending arbitration, and dismissing the complaint with prejudice. This Court has jurisdiction to hear this appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

### A. Denial of Motion to Remand

This Court reviews de novo the bankruptcy court's denial of Plaintiffs' Motion to Remand. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). As the party seeking removal, Wilkie bears the burden of demonstrating subject-matter jurisdiction. *See id.*

Bankruptcy removal is appropriate here if the district court has jurisdiction under 28 U.S.C. § 1334. *In re HNRC Dissolution Co.*, 761 F. App'x 553, 559 (6th Cir. 2019); 28 U.S.C. § 1452. Under § 1334, district courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a–b). This creates "four types of matters over which the district court has jurisdiction: (1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991) (quoting 28 U.S.C. § 1334(a–b)). The first category refers to the bankruptcy petition itself. *Id*. Accordingly, the latter three categories define bankruptcy jurisdiction here: proceedings "arising under," "arising in," or "related to" a case under title 11. *Id*. at 1140–41.

The "arising under," "arising in," and "related to" categories also govern the "core proceeding" analysis. 28 U.S.C. § 157(a); *Wolverine Radio*, 930 F.2d at 1144. Core proceedings include those in the "arising under" and "arising in" categories, but not proceedings only "related to" the bankruptcy. *Stern v. Marshall*, 564 U.S. 462, 476 (2011) ("[C]ore proceedings are those that arise in a bankruptcy case or under title 11"). Bankruptcy judges may enter final orders in "core proceedings" and in cases under title 11. 28 U.S.C. § 157(b). A bankruptcy judge may hear a non-core proceeding "that is otherwise related to a case under title 11," but only the district judge may enter any final order or judgment in a non-core proceeding, unless the parties consent otherwise. 28 U.S.C. § 157(c).

The Sixth Circuit has defined only the "related to" category in the jurisdictional context. "Related-to" jurisdiction exists where "the outcome of th[e] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wolverine Radio*, 930 F.2d at 1142

4

(quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984). An "extremely tenuous connection" will not suffice. *Id*. The Sixth Circuit has defined the "arising in" and "arising under" categories when distinguishing between core and non-core proceedings. *See, e.g. In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006). A core proceeding either "invokes a substantive right created by federal bankruptcy law" (arising-under) or "could not exist outside of the bankruptcy" (arising-in). *Id.* (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 482 (6th Cir. 1992)).

> 1. *Related-to Jurisdiction Does Not Subsume Arising-in Jurisdiction.*

Plaintiffs contend that related-to jurisdiction encompasses arising-under and arising-in jurisdiction. Plaintiffs base this conclusion on *Wolverine Radio*, where the Sixth Circuit adopted the conceivable effect test for related-to jurisdiction. In finding "at least" related-to jurisdiction existed, the Sixth Circuit stated:

> For the purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.

*Wolverine Radio*, 930 F.2d at 1141 (internal citations omitted).

In Plaintiffs' view, the last sentence quoted above dictates that if there is no related-to jurisdiction, there cannot be arising-under or arising-in jurisdiction. Wilkie argues that Plaintiffs mistake sufficiency for necessity; *Wolverine Radio* says that a finding of "at least" related-to jurisdiction is sufficient to establish bankruptcy jurisdiction without further analysis.

Courts in the Sixth Circuit have read *Wolverine Radio* both ways. After *Wolverine Radio*, some courts have held that the test for related-to jurisdiction is outcome-determinative for bankruptcy jurisdiction. *See, e.g.*, *Spradlin v. Pikeville Energy Grp., LLC*, No. CIV. 12-111, 2012

WL 6706188, at *6 (E.D. Ky. Dec. 26, 2012). Other courts have held that the jurisdictional categories each stand alone, even if they may overlap. *See, e.g.*, *In re HNRC Dissolution Co.*, No. 02–14261, 2018 WL 2970722, at *3 (Bankr. E.D. Ky. June 11, 2018) ("The Court has 'arising in' jurisdiction and that is sufficient . . . ''Related to' jurisdiction has nothing to do with the issues here'") (quoting *In re Motors Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014)); *see also McKinstry v. Sergent*, 442 B.R. 567, 572–76 (E.D. Ky. 2011) ("Any one of [arising-under, arising-in, or related-to jurisdiction] will suffice"). As one court put it, "*Wolverine Radio* could be read to mean only that in determining § 1334(b) jurisdiction, it is 'necessary only' to find related-to jurisdiction, not that in determining § 1334(b) jurisdiction, it is 'necessary only' to determine whether there is related-to jurisdiction, yes or no." *In re Alma Energy, LLC*, 521 B.R. 1, 26 n.3 (Bankr. E.D. Ky. 2014).

Plaintiffs' interpretation has some support. *Wolverine Radio* states that "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." "Whether" usually means "if" or "if, or not." CAMBRIDGE DICTIONARY, dictionary.cambridge.org (last visited Mar. 11, 2025). If the Sixth Circuit intended Wilkie's meaning, it would have been more precise to use "that" in place of "whether." Further, as Plaintiffs point out, § 157 refers to non-core proceedings as "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). The word "otherwise" suggests that core proceedings, including arising-in proceedings, are also related to a case under title 11.

Wilkie has the better reading when looking to *Wolverine Radio* and the bankruptcy statute as a whole. *Wolverine Radio* states that the three categories "operate conjunctively to define the scope of jurisdiction." *Wolverine Radio*, 930 F.2d at 1141. Therefore, "related to" does not define the scope of jurisdiction operating alone. "Arising in" and "arising under" must play some role.

6

Further, the modifier "at least" suggests that arising-under and arising-in proceedings have stronger connections to the bankruptcy than a proceeding that is only "related to." This fits with the overall statutory structure; arising-under and arising-in proceedings are core. An arising-in proceeding may be more closely connected to the bankruptcy than a related-to proceeding, but not meet related-to jurisdiction's conceivable-effect test. *See In re Simmons*, 205 B.R. 834, 843 (Bankr. W.D. Tex. 1997) ("'At least' does not mean that there can be no other possibility"). Moreover, in *Wolverine Radio*, the Sixth Circuit determined that related-to jurisdiction existed. Because finding "at least" related-to jurisdiction is sufficient to establish bankruptcy jurisdiction, the court "did not need to distinguish between each of the section 1334(b) categories for that purpose." *Wolverine Radio*, 930 F.2d at 1144.

      The statute's text supports Wilkie's interpretation. Plaintiffs' reading erases the terms "arising under" and "arising in" from § 1334(b). And courts "must give effect, if possible, to every word of the statute." *Bowsher v. Merck & Co.*, 460 U.S. 824, 833, 103 S. Ct. 1587, 1593, 75 L. Ed. 2d 580 (1983). Plaintiffs argue that the terms have meaning in the § 157 core proceeding determination. This argument does not address why Congress included the terms "arising under" and "arising in" in the § 1334(b) jurisdictional grant if "related to" covers all three categories. Further, the § 1334(b) jurisdictional grant language first appeared in the 1978 Bankruptcy Reform Act, which enabled bankruptcy courts to decide "all civil proceedings arising under . . . or arising in or related to cases under title 11." *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 54 (1982). In *Northern Pipeline*, the Supreme Court held parts of the 1978 Act unconstitutional. Congress responded by granting jurisdiction over the same categories to the district courts and creating the referral system found in § 157. *Wellness Int'l Network, Ltd v.*

*Sharif*, 575 U.S. 665, 670 (2015). Based on this history, Congress cannot have included "arising under" and "arising in" in the jurisdictional grant in reference to the not-yet written § 157.

A recent published case confirms that Wilkie is correct. In *Autumn Wind*, the Sixth Circuit clarified that the test for related-to jurisdiction does not apply to arising-under or arising-in jurisdiction. *Autumn Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt., LLC*, 92 F.4th 630, 637 (6th Cir. 2024). The Sixth Circuit held that "the conceivable-effect test applies only to related-to jurisdiction," and, consequently, a finding of no related-to jurisdiction ends the § 1334(b) jurisdictional inquiry when "neither arising-under nor arising-in jurisdiction is implicated." *Id.* This holding implies the converse: if there is no related-to jurisdiction, but there may be arising-under or arising-in jurisdiction, the jurisdictional inquiry continues beyond the conceivable-effect test.

Only Wilkie's reading of *Wolverine Radio* is consistent with *Autumn Wind*. If the conceivable-effect test is met, there is bankruptcy jurisdiction because related-to jurisdiction exists. *Wolverine Radio*, 930 F.2d at 1142. But where related-to jurisdiction does not exist, courts should evaluate whether "arising-under or arising-in jurisdiction is implicated." *See Autumn Wind*, 92 F.4th at 637. Read together, *Autumn Wind* and *Wolverine Radio* dictate that a court may find that it does have bankruptcy jurisdiction without differentiating between arising-under, arising-in, or related-to jurisdiction, but a court cannot determine that it lacks bankruptcy jurisdiction until it rules out each jurisdictional category.

2. *Arising-in Jurisdiction*

Arising-in proceedings "by their nature, could arise only in bankruptcy cases." *Wolverine Radio*, 930 F.2d at 1144. Under the Sixth Circuit test, a claim arises in the bankruptcy case if: (1) "the claim could not have existed 'but for' the bankruptcy"; and (2) "the factual underpinnings of

8

the claim actually arose in the bankruptcy case." *In re HNRC Dissolution Co.*, 761 F. App'x 553, 562 (6th Cir. 2019); *Lowenbraun*, 453 F.3d at 320–21.

At a high level of generality, the form of the claim here—a legal malpractice action—could exist outside of the bankruptcy. But courts must look at both form and substance to make the arising-in determination. *Sanders Confectionery*, 973 F.2d at 483; *Wolverine Radio*, 930 F.2d at 1144. Plaintiffs' complaint alleges that Wilkie failed to take adequate steps to warn, advise, and protect Plaintiffs from ERISA withdrawal liability stemming from the Chapter 11 Plan that Wilkie negotiated in the bankruptcy case. (Compl., R. 1, ¶¶ 6, 11, 14–16, 20). Accordingly, the claim could not exist outside the bankruptcy and the claim's factual underpinnings actually arose in the bankruptcy case. *See In re HNRC Dissolution Co.*, 761 F. App'x at 562 (holding that state-law claims arose in the bankruptcy where the plaintiffs faulted the defendants for bad acts in the bankruptcy and claimed damages from the outcome of the bankruptcy); *see also Baker v. Simpson*, 613 F.3d 346, 350–51 (2d Cir. 2010) (holding that malpractice claims based on services rendered in a bankruptcy case fall within arising-in jurisdiction). There is arising-in jurisdiction here.

\*\*\*

Because there is at least arising-in jurisdiction, this Court need not address whether there is also related-to jurisdiction. Further, because arising-in proceedings are core, the bankruptcy court did not err in declining to abstain or order equitable remand. This Court **AFFIRMS** the bankruptcy court's denial of Plaintiffs' Motion for Remand.

### B. Denial of Motion to Stay

This Court reviews de novo the bankruptcy court's denial of Plaintiffs' Motion to Stay Pending Arbitration. *See Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Accordingly, this Court may affirm the bankruptcy court's decision on any grounds supported by

9

the record. *See In re Alfes*, 709 F.3d 631, 636 (6th Cir. 2013). The bankruptcy court denied Plaintiffs' Motion based on an inherent conflict between the arbitration agreement and the underlying purpose of the Bankruptcy Code. (Op. & Order, R. 89, 33). Although Wilkie asserted Plaintiffs waived their right to arbitrate, the bankruptcy court did not decide that issue. (*Id.* at 33). Because Plaintiffs waived their arbitration rights through their litigation conduct, this Court affirms the bankruptcy court's denial of Plaintiffs' Motion.

As a threshold matter, Plaintiffs argue that the waiver issue is itself arbitrable. Under Sixth Circuit precedent, however, courts—not arbitrators—presumptively decide whether a party has waived the right to demand arbitration through litigation conduct. *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (noting an exception to referring arbitrability issues to arbitrators when the party seeking arbitration has defaulted on their right to arbitrate).

The Supreme Court recently clarified that courts should "apply ordinary waiver rules, looking for the 'intentional relinquishment or abandonment of a known right'" to determine waiver of the right to arbitrate. *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). Under *Morgan*, courts must make "arbitration agreements as enforceable as other contracts, but not more so." *Id.* at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Accordingly, the Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration[.]" *Morgan*, 596 U.S. at 419.

Before *Morgan*, the Sixth Circuit litigation-conduct waiver test required showing: (1) that the party had taken "actions that are completely inconsistent with any reliance on an arbitration

10

agreement"; and (2) prejudice to the opposing party. *Schwebke*, 96 F.4th at 974. The Sixth Circuit has held that "[a]t a minimum, *Morgan* eliminated the prejudice requirement." *Id*. In *Schwebke*, the Sixth Circuit "assume[d] without deciding" that the "completely inconsistent" prong survived *Morgan*. *Id*. at 974–75.

On remand in *Morgan*, the Supreme Court allowed the Eighth Circuit to apply its existing waiver test without the prejudice requirement. *Id.* at 974. But the Eighth Circuit test did not require complete inconsistency. *Id*. Under the modified Eighth Circuit test, a party waives its right to arbitrate when it acts inconsistently with a known arbitration right. *Id*. Similarly, the Third Circuit "[a]pplying the general rule for waiver as *Morgan* directs," looked to whether the party "acted inconsistently with an intent to assert its right to arbitrate" under the totality of the circumstances. *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023).

Here, Plaintiffs' conduct amounts to waiver under either the general rule for waiver or the complete inconsistency standard. Plaintiffs brought this action in state court without reserving their arbitration rights. This is inconsistent with an intent to assert the right to arbitrate and demonstrates intentional relinquishment of that right. *Lee Constr., LLC v. Bratton*, No. 1:22-cv-196, 2023 WL 5805848, at *4 (E.D. Tenn. July 28, 2023); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009) ("[S]hort of directly saying so in open court, it is difficult to see how a party could more clearly evince a desire to resolve a dispute through litigation" than by "filing suit without asserting an arbitration clause"). Standing alone, however, filing a complaint is not always "*completely* inconsistent" with "*any* reliance" on arbitration rights. *O'Meara as next friend of O'Meara v. Fid. Invs.*, No. 2:20-cv-2838, 2021 WL 493422, at *4 (W.D. Tenn. Feb. 10, 2021) (Finding no complete inconsistency because "Plaintiff mentioned arbitration and his intent to

11

investigate the validity and enforceability of any arbitration agreements in every filing in this case apart from the Complaint itself").

Combined with their choice to bring suit in state court, Plaintiffs subsequent actions are completely inconsistent with any reliance on the arbitration agreement. After Wilkie removed the action to bankruptcy court, Plaintiffs moved for remand to state court. Had Plaintiffs only argued that the bankruptcy court lacked subject-matter jurisdiction, that might not have been "completely inconsistent" with reliance on arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 476 n.2 (2024) (a bankruptcy court cannot stay a case pending arbitration if it lacks jurisdiction). But Plaintiffs made alternative arguments assuming jurisdiction, and, even so, did not express any intent to invoke the arbitration agreement. Instead, Plaintiffs requested mandatory abstention, permissive abstention, or equitable remand to state court. Plaintiffs asserted that the state court was an appropriate forum, could timely adjudicate the claim, and could meet their jury trial demand. (Mot. To Remand, R. 47, 14–17). Plaintiffs then asked the bankruptcy court permissibly to abstain and remand out of "respect for Plaintiffs' choice of a state-court forum." (*Id.* at 17).

Plaintiffs now contend that they only initiated the lawsuit out of concern that Wilkie would dishonor the arbitration agreement and seek to apply Ohio's statute of limitations. (Reply Br. 18–19). Plaintiffs do not explain why they did not reserve the right to arbitrate in their state court complaint or initiate arbitration in conjunction with filing the complaint. Further, in their Notice of Removal, Wilkie stated that "Plaintiffs' claim is also subject to an arbitration clause." (R. 1, 7 n.6). Plaintiffs did not then commence arbitration or move to stay the case. Instead, Plaintiffs asked to return to state court through remand or abstention. Plaintiffs noted that Wilkie asserted that an arbitration agreement applied, but Plaintiffs only did so to argue that the bankruptcy court should return the action to state court because Wilkie had engaged in forum-shopping by removing

the case. (Mot. to Remand, R. 47, 17). Only after Wilkie opposed remand and detailed the basis for arising-in jurisdiction did Plaintiffs invoke their arbitration rights.

In sum, Plaintiffs sought to litigate the case in state court "before deciding they would fare better in arbitration" than before the bankruptcy court. *See Morgan*, 596 U.S. at 413. Plaintiffs' actions demonstrate intentional relinquishment of their right to arbitration and are completely inconsistent with any reliance on the arbitration agreement. Accordingly, Plaintiffs waived their right to arbitrate. This Court **AFFIRMS** the bankruptcy court's denial of Plaintiffs' Motion to Stay Pending Arbitration.

### C. Dismissal for Failure to State a Claim

This Court reviews de novo an appeal from the bankruptcy court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See In re McKenzie*, 716 F.3d 404, 412 (6th Cir. 2013); *In re Chenault*, 586 B.R. 414, 417 (B.A.P. 6th Cir. 2018). In reviewing such a dismissal, this Court accepts all well-pleaded factual allegations as true and construes the complaint in the plaintiffs' favor. *United Food & Commer. Workers Union-Emp. Pension Fund v. Rubber Assocs.*, 812 F.3d 521, 524 (6th Cir. 2016). To survive dismissal, the complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Here, Plaintiffs fail to state a claim because they do not allege gross negligence, as required by the Exculpation Clause. The parties agree that the Exculpation Clause, at minimum, acts to raise the standard of care to gross negligence for covered claims. (Appellant Br. 44, 48; Appellee

Br. 48). The parties do not dispute that the Exculpation Clause defense can be considered at the motion-to-dismiss stage.

The complaint does not mention gross negligence. (Compl., R. 1). The complaint alleges that "Defendants breached their duties and obligations to Plaintiffs, including professional standards, duties of care, and fiduciary duties," that those duties "arose from the attorney/client relationship," and that "[a]s a result of Defendants' negligence and malpractice, Plaintiffs proximately suffered financial harm[.]" (Compl., R. 1, ¶¶ 23, 25–27). These allegations reflect the elements for ordinary legal malpractice based on negligence. *See Badgett v. Schulman*, No. 17-3331, 2018 WL 11591213, at *3 (6th Cir. Nov. 28, 2018).

Plaintiffs argue that the complaint meets the Exculpation Clause's gross-negligence exception by alleging "actual malice." (Compl., R. 1, ¶ 28). Plaintiffs contend that the complaint sufficiently pleads actual malice because the factual allegations show "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). Plaintiffs point to allegations that Wilkie claims ERISA withdrawal liability expertise and that Plaintiffs face potential withdrawal liability claims of over $6.5 billion. (Appellant Br. 49–50; Compl., R. 1, ¶ 26). The complaint does not allege that Wilkie's failure to warn had a "great probability of causing" this potential substantial harm to transpire. *Preston*, 512 N.E.2d at 1176 ("A possibility or even probability is not enough as that requirement would place the act in the realm of negligence").

Plaintiffs also argue that the Exculpation Clause does not apply because it only covers a "claim related to any act or omission based on the negotiation" of the Chapter 11 Plan. (Appellant Br. 47 (quoting the Exculpation Clause)). First, Plaintiffs argue that failure to warn or advise of the ERISA liability is not sufficiently related to the negotiation of the Chapter 11 Plan to fall under

14

the Exculpation Clause. Second, Plaintiffs contend that their failure to warn allegations do not contain a temporal limitation. Plaintiffs argue that Wilkie's representation began "prior to" the bankruptcy and encompassed "the potential restructuring of Murray Energy Corporation" as a whole, not just the bankruptcy proceeding. (Compl., R. 1, ¶¶ 10, 13).

Plaintiffs' arguments contort the complaint. The complaint specifically links the failure to warn allegations to the "impact" of the Chapter 11 Plan. (Compl., R. 1, ¶ 26). The complaint also ties the failure to warn to the negotiation. The complaint alleges that Defendants "failed to warn [Robert Murray] of the ramifications of the plan of reorganization that Defendants negotiated as their legal counsel in the Bankruptcy Proceeding." (*Id.* ¶ 25). Moreover, even if the Exculpation Clause did not apply to malpractice prior to the bankruptcy, any such claim would not survive for lack of damages. The complaint solely alleges harm stemming from "[t]he plan of reorganization in the Bankruptcy Proceeding that Defendants negotiated." (*See* Compl., R. 1, ¶ 20); *Kovacs v. Chesley*, 406 F.3d 393, 398 (6th Cir. 2005) (A legal malpractice action requires showing "resulting damage or loss").

For the reasons stated above, the complaint fails to plead gross negligence, as required to meet the Exculpation Clause exception. Accordingly, Plaintiffs fail to state a claim upon which relief can be granted. This Court need not reach the bankruptcy court's alternative grounds for dismissal. This Court **AFFIRMS** the bankruptcy court's dismissal of Plaintiffs' complaint.

### D. Dismissal With Prejudice

Plaintiffs argue that the bankruptcy court erred when it dismissed the complaint with prejudice without an opportunity to amend. This Court reviews for abuse of discretion. *See United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021).

15

A court may deny leave to amend if the plaintiff "neither moved formally to amend nor proffered a proposed amended complaint." *Id*.  A court may deny "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought" because the court cannot determine whether justice requires leave to amend without "the substance of the proposed amendment." *Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017).  Similarly, "if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion . . . to dismiss the claims with prejudice." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011).

Here, Plaintiffs never moved for leave to amend or filed a proposed amended complaint. Plaintiffs only included a footnote in their opposition to the Motion to Dismiss that requested, "In the unlikely event that the Court enters an order granting [Wilkie's Motion to Dismiss] . . . it be without prejudice so that Plaintiffs may have an opportunity to file a motion for leave to amend and a proposed amended Complaint." (Resp. to Mot. to Dismiss, R. 48, 14 n.4).  Accordingly, this Court **AFFIRMS** the bankruptcy court's dismissal of Plaintiffs' claim with prejudice.

### III.  CONCLUSION.

For the foregoing reasons, this Court hereby **AFFIRMS** the bankruptcy court's judgment.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 11, 2025**